487 So.2d 836 (1986)
Carolyn ROBERTS and Dana Roberts
v.
Wesley GRISHAM and United States Fidelity & Guaranty Company.
No. 55490.
Supreme Court of Mississippi.
April 30, 1986.
Jim Waide, Estes & Waide, Tupelo, for appellants.
John W. Crowell, Gholson, Hicks & Nichols, Columbus, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Carolyn Roberts and Dana Roberts, widow and child, respectively, of Wesley Roberts, deceased, (Roberts) filed suit in the Circuit Court of Clay County against Wesley Grisham and United States Fidelity & Guaranty Company, the uninsured motorist insurance carrier for Wesley Roberts, as a result of his wrongful death. The lower court granted a directed verdict in favor of U.S.F. & G.
The sole question presented on this appeal is whether or not the lower court erred in entering the directed verdict. Appellants contend that there was evidence from which a jury could find that the death of Roberts arose out of the "operation, maintenance *837 or use" of the uninsured (Grisham) vehicle. The lower court, in granting the directed verdict, held to the contrary. The precise question has not previously been decided by this Court.
The record indicates that Grisham and Roberts had engaged in a dispute concerning work that Grisham had performed for Roberts. On May 19, 1982, Grisham met Roberts along Highway 45 north of West Point and followed him along a gravel road to a point where Roberts parked in front of the Larry Kimbrough home. According to Kimbrough, Grisham got out of his car, walked around and spoke with Roberts on the driver's side of the vehicle. Grisham testified that he stopped his car alongside the Roberts truck and they talked for several minutes; that a tractor approached from the rear and Grisham moved forward to allow the traffic to pass and then backed into his original position. Subsequently, Grisham left his car, walked over to the driver's side of the truck and shot Roberts in the head, inflicting a fatal wound.[1]
Appellants contend that Grisham used his uninsured vehicle to block Roberts' truck, preventing his escape, and thereby used the vehicle in causing the death of Roberts. The only proof that Grisham's car was used to block Roberts' escape was the observation by Larry Kimbrough that Grisham's car was "nosed in" and that Roberts would have had to back up or go into a ditch to pass the Grisham vehicle. Kimbrough also testified that when Grisham drove up, Kimbrough "... just thought he was pulling off the side of the road where people could get around."
The specific provisions in the uninsured motorist policy covering Roberts' vehicle, issued by U.S.F. & G., under which appellants claim, follow:
We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
(1) Bodily injury sustained by a covered person and caused by an accident; and
(2) Property damage caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. (Emphasis added)
Both parties contend that Merchants Co. v. Hartford Accident & Indemnity Co., 187 Miss. 301, 188 So. 571 (1939), supports their respective views as to liability. In Merchants Co., one of its trucks went into a ditch and in order to remove the truck, several large poles were used. The operator of the truck drove away, leaving the poles in the road. An automobile struck one or more of the poles and an occupant was severely injured, for which he recovered judgment against the Merchants Company. The identical coverage provision set forth hereinabove was contained in the policy of insurance issued to Merchants Company, viz,
To pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . .. because of bodily injury ... sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile. (Emphasis added)
188 So. at 571.
The Court held that coverage existed because the injuries arose out of the ownership, maintenance and use of the automobile, and stated:
Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation,  which is to say, that the *838 event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists.
Certainly the use of the poles to extricate the truck from the roadside ditch was an event which arose out of, transpired in, and was necessary to, the operation of the truck. The next event which happened was that the truck drove away, leaving the poles in the road, but the poles were not left until the moment when the truck drove away. There was no intervention of something which had no direct or substantial relation to the use or operation.
The use of the poles in extricating the truck and thence the driving away and leaving the poles in the road thus had such a direct and substantial relation or connection in point of actual fact as respects the use and operation of the truck that in order to separate that use or break its continuity, we must interpose or insert, not an independent act, there being none such, but the negligent omission to remove the poles from the road, which, if allowed, would be to insert or interpolate into the contract a provision that liability shall follow only as to a strictly proximate cause; and, under familiar rules, we cannot rewrite the insurance contract by interpolating that provision therein.
188 So. at 572.
In Merchants Co. this Court was of the opinion that there was coverage because the injuries of Grubbs arose out of the ownership, maintenance, and use of the automobile.
Appellants cite and rely upon Stevens v. United States Fidelity & Guaranty Co., 345 So.2d 1041 (Miss. 1977). Stevens is distinguished from the case sub judice since it considers a different question than that presently before the Court, although it related to uninsured motorist coverage. Stevens was employed as a wrecker operator and answered an emergency call to remove from the highway a truck, which was damaged in an accident. After Stevens arrived at the scene and pulled the truck off the highway, he parked the wrecker with the left door open and emergency lights on, and began to sweep the debris which resulted from the collision. As he walked back to the wrecker, Stevens was struck by an uninsured automobile. He filed suit against the uninsured motorist carrier providing coverage for the wrecker. The question presented was whether Stevens was an "insured" within the terms of the policy, which defined "insured" as one using the vehicle with the consent of the "named insured." There was no question involved as to whether or not his injuries arose out of the ownership, maintenance or use by the operator of an uninsured motor vehicle.
In Wyoming Farm Bureau Mutual Ins. Co., Inc. v. State Farm Mutual, 467 F.2d 990 (10th Cir.1972), a passenger in an insured vehicle threw an empty bottle out of the car, The bottle hit the curb and shattered, resulting in an injury to the plaintiff. The Wyoming Court held that the relationship between the use of the vehicle and the injury need not be a direct one, but that some relationship must exist. Even though it found that this action was incidental to the operation of the vehicle, the Court said:
The numerous cases which have construed the clause that we have before us hold in effect, if not directly, that the relationship between the use of the vehicle and the injury complained of need not be a direct one. Injuries indirectly related to the use of the vehicle are held to be covered. The Courts do scrutinize the facts and require that the negligent act and the injury be fairly proximate. Thus, in Culp, d/b/a Dr. Pepper Bottling Co. v. Northwestern Pacific Indemnity Co., 365 F.2d 474, 478 (10th Cir. 1966), where the insured's employee became involved in an argument while unloading merchandise and in the course of the argument hit the claimant over the *839 head with a bottle, it was held that the incident was not covered. The Court stated, however, that a case of assault and battery might be within the coverage if, for example, the delivery operations were connected with the assault and battery. The reason for denying coverage in Culp was that the assault and battery was not even incidental to the operation of the truck... .
457 F.2d at 993.
Such voluntary, deliberate acts are independent acts which render a vehicle's use incidental, viz, argument followed by assault or shooting, which result in injury did not arise out of the use of the insured vehicle. McDonald v. Great American Ins. Co., 224 F. Supp. 369 (D.R.I. 1963); Richard Knox Mut. Ins. Co. v. Kallen, 376 F.2d 360 (6th Cir.1967).
In order for liability to attach under the coverage provision in the case sub judice, the act or acts committed at the time the wrongful cause was set in motion must have arisen out of either the maintenance, operation, or use of the vehicle; that they must have continued in unbroken sequence to cause the plaintiff's injury; and any intervening cause that interrupted or broke that sequence removed any developing liability. We are of the opinion that the shooting of Roberts by Grisham was an intervening cause, which broke the use sequence of the automobile and death of Roberts. Red Ball Motor Freight v. Employers Mut. Liability Ins. Co., 189 F.2d 374 (5th Cir.1951). Cases from other jurisdictions holding that the injury was not incidental to the use of the vehicle for that purpose are U.S.F. & G. v. Western Fire Ins. Co., 450 S.W.2d 491 (Ky. 1970); National Family Ins. Co. v. Boyer, 269 N.W.2d 10 (Minn. 1978); and Western Casualty and Surety Co. v. Branon, 463 F. Supp. 1208 (E.D.Ill. 1979).
In American Liberty Ins. Co. v. Soules, 288 Ala. 163, 258 So.2d 872 (1972), the insured and his fiance were sitting in the insured's automobile engaging in an argument. The insured was a deputy sheriff, who placed his pistol behind him. As he was moving the pistol to another place, it fired and wounded the young lady in the neck. The deputy could not say why it had fired. The insurance policy contained the same language as the policy here. In denying recovery, the Alabama Supreme Court said:
There must be a causal connection between the accident arising out of the use of the automobile before coverage can be successfully invoked. While Heth and Miss Sonee were sitting in the automobile at the time the pistol went off, there is nothing from which an inference can be drawn connecting the automobile with the firing of the pistol. The injury was not one arising from or connected with the inherent use of the automobile as a vehicle. The automobile was merely the situs of the accident which could as well have occurred in any other location.
258 So.2d at 875-876.
We hold that, under the facts of this case, the fatal shooting of Wesley Roberts by Wesley Grisham did not arise out of the ownership, maintenance or use of the uninsured motor vehicle and was not incidental thereto. Further, we see no causal connection between the shooting and the uninsured automobile. The lower court did not err in sustaining the motion for directed verdict on behalf of U.S.F. & G., and, therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] Grisham was indicted, tried and convicted in the Circuit Court of Clay County on a charge of murder and was sentenced to life in the custody of the Mississippi Department of Corrections.