521 So.2d 876 (1988)
John C. COLEMAN
v.
Kado SANFORD, Southern Farm Bureau Casualty Insurance Company, City of Itta Bena, and Nationwide General Insurance Company.
No. 57558.
Supreme Court of Mississippi.
March 2, 1988.
Jimmie D. Marshall, Susan D. Fahey, Robertshaw, Terney & Noble, Greenville, for appellant.
Marc A. Biggers, Lonnie Bailey, Upshaw, Williams, Biggers, Page & Kruger, Arnold Gwin, Greenwood, for appellees.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
John C. Coleman filed suit in the Circuit Court of Leflore County against Kado Sanford and Southern Farm Bureau Casualty Insurance Company (Southern Farm). Coleman later added the City of Itta Bena as a defendant. Nationwide General Insurance Company, Sanford's liability carrier, (Nationwide) was granted leave to intervene. After discovery and on motion of Southern Farm and Nationwide, the trial court entered summary judgment in favor of Southern Farm and Nationwide.
The facts of this case are undisputed. At approximately 10:30 a.m. on November 16, 1984, John C. Coleman was driving north on Highway 7 near Itta Bena, Mississippi. Kado Sanford, driving south on the same highway, crossed over the center line and struck Coleman's vehicle. Neither Coleman nor Sanford was injured; little damage was done to the vehicles.
A passerby telephoned the police, who arrived momentarily. The officers allowed Coleman to leave, and he continued north on Highway 7. Then the officers told Sanford to move his truck off the road because they wanted to administer a test to determine whether he was intoxicated. Sanford got into the truck, but instead of pulling off onto the side of the road, he began following Coleman. When he caught up with Coleman, Sanford drove onto the right shoulder of the road, accelerated until he was slightly ahead of Coleman, and then  *877 with both vehicles moving  shot through Coleman's windshield with a handgun. Coleman was seriously injured.
In the trial court Coleman claimed that his injuries were covered by his uninsured motorist policy with Southern Farm. Kado's automobile liability insurer, Nationwide, intervened seeking a declaratory judgment that Coleman's injuries were not covered under Kado Sanford's Nationwide policy.
From the trial court's entry of summary judgment in favor of Southern Farm and Nationwide, (the other defendants are not parties to this appeal) Kado Sanford appeals, assigning three (3) errors.

I. WHETHER, IN DECIDING WHETHER AN EVENT IS AN "ACCIDENT" WITHIN THE MEANING OF JOHN COLEMAN'S UNINSURED MOTORIST POLICY, THE COURT SHOULD LOOK THROUGH JOHN COLEMAN'S EYES.
There is case law indicating that whether the injuries are caused by an accident is to be determined from the viewpoint of the injured insured. Georgia Casualty Company v. Alden Mills, 156 Miss. 853, 127 So. 555 (1930). There is, however, absolutely no indication that the trial court ruled as it did because it failed to define "accident" from Coleman's perspective. Rather, it appears that the trial court entered judgment for the defendants because the accident did not arise from ownership maintenance or use of the vehicle. There is no merit in this assignment of error.

II. DID THE SHOOTING OF JOHN COLEMAN ARISE OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF SANFORD'S VEHICLE?
Both Sanford's liability policy and Coleman's uninsured motorist policy provided coverage only for damages arising out of the ownership, maintenance or use of the described vehicle. Thus, neither coverage would apply unless the shooting arose out of Sanford's ownership, maintenance or use of his vehicle. The undisputed facts are that, after the minor collision, the police allowed Coleman to leave but told Sanford to move his truck off the road so they could administer an intoxication test. Although Coleman and Sanford had not argued about the accident, Sanford "took off" after Coleman instead of pulling off the road as instructed. Sanford's vehicle approached Coleman's from behind and passed him on the right shoulder; then, with both cars still moving, Sanford shot through Coleman's windshield with a handgun, injuring Coleman. Sanford stated in deposition that he had been very intoxicated at the time of the shooting, and that he did not remember the actual shooting. According to Coleman's argument, this evidence presents a fact issue as to whether the shooting arose from use of the vehicle.
It appears that Roberts v. Grisham, 487 So.2d 836 (Miss. 1986), controls. There, Grisham and Roberts had an argument, after which they met on the highway, each in his own vehicle. Grisham followed Roberts. When Roberts stopped, Grisham walked to the driver's side of Robert's truck and, after a few minutes, fatally shot Roberts. The lower court entered a directed verdict for Robert's uninsured motorist carrier, holding as a matter of law that the shooting did not arise from the ownership, maintenance or use of the vehicle. This Court affirmed, holding that "[s]uch voluntary, deliberate acts are independent acts which render a vehicle's use incidental, viz, argument followed by assault or shooting, which result in injury did not arise out of the use of the insured vehicle." Id. at 839.
Coleman claims that his case is distinguishable from Roberts, in that 1) Kado was actually driving the vehicle when he shot Coleman, and 2) Kado used the vehicle to catch up with Coleman. In spite of those facts, the shooting was still, in the language of Roberts, a voluntary, deliberate act which rendered use of the vehicle incidental. Although Sanford cites cases from other jurisdictions to the contrary, Sciascia v. American Ins. Co., 183 N.J. Super. 352, 443 A.2d 1118 (1983); Novak v. Government Employees Ins. Co., 424 So.2d 178 (Fla.App. Div. 4, 1983), in Mississippi Roberts controls.

*878 III. DID SANFORD'S EXTREME INTOXICATION AT THE TIME OF THE SHOOTING NEGATE THE INTENT TO COMMIT THE ASSAULT, THUS MAKING THE EXCEPTION FOR INTENTIONAL ACTS, IN SANFORD'S POLICY, IRRELEVANT?
At the time of the shooting, Kado was quite intoxicated, having drunk more than two (2) pints of whiskey. Coleman claims that Kado, because of his extreme intoxication, could not form the requisite intent to commit an intentional tort, and that the intentional act exception of Kado's liability policy was therefore inapplicable.
Nationwide, the only appellee concerned about this point, confesses that there was a fact issue as to intent. It claims, however, that the point is irrelevant. Because the injuries did not arise out of the ownership, maintenance or use of Kado's vehicle, there is no coverage, regardless of whether Kado was too intoxicated to commit an intentional tort.
The fact issue as to intent does not raise a fact question as to whether the act was voluntary (Roberts says independent voluntary act renders use of vehicle incidental). An act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it. Stevens, et ux v. FMC Corp., 515 So.2d 928 (Miss. 1987). A voluntary act, on the other hand, is one that is unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself. Black's Law Dictionary, Fifth Edition.
The judgment of the lower court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.