650 So.2d 1383 (1995)
John S. SPRADLIN and Charles D. Cage
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 91-CA-01147-SCT.
Supreme Court of Mississippi.
February 16, 1995.
H.L. Merideth, Jr., Greenville, for appellants.
Edward A. Moss, Holcomb Dunbar Connell Chaffin & Willard, Oxford, for appellee.
Before DAN M. LEE, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
John S. Spradlin ("Spradlin") and Charles D. Cage ("Cage") brought separate actions in *1384 the Circuit Court of Washington County, Mississippi, against State Farm Mutual Automobile Insurance Company ("State Farm") seeking to recover damages under the uninsured motorist ("UM") coverage of an insurance policy issued by State Farm.[1],[2] While traveling in an insured vehicle driven by Cage, Spradlin and Cage sustained personal injuries as a result of gunshots fired into the car by Robbie Wise, a passenger in another vehicle, one not covered by insurance. State Farm denied the claims, stating that there was no UM coverage for such an incident under the terms of the policy or under Mississippi law. On a motion by State Farm, the claims against that insurance company were consolidated by the Circuit Court. Subsequently, the Circuit Court granted summary judgment on the consolidated claims in favor of State Farm and a final judgment was entered on November 6, 1991.[3] Spradlin and Cage appeal to this Court, raising the following issues:
I. WHETHER OR NOT THE UM STATUTE EXPRESSLY MANDATES THAT ALL AUTOMOBILE INSURANCE COMPANIES ISSUING AUTOMOBILE LIABILITY INSURANCE POLICIES AFTER JANUARY 1, 1967, INCLUDE UM COVERAGE AGREEING TO PAY THEIR INSURED ALL SUMS WHICH THE INSURED SHALL BE LEGALLY ENTITLED TO RECOVER AS DAMAGES FOR BODILY INJURY FROM THE OWNER OR OPERATOR OF AN UNINSURED MOTOR VEHICLE, THEN CAN STATE FARM REDUCE OR CUT DOWN THE SCOPE OF THE COVERAGE MANDATED BY THE UM STATUTE BY INCLUDING IN ITS POLICY HERE INVOLVED LANGUAGE REQUIRING THE BODILY INJURY TO BE CAUSED BY ACCIDENT ARISING OUT OF THE OPERATION, MAINTENANCE OR USE OF AN UNINSURED MOTOR VEHICLE.
II. WHETHER OR NOT, UNDER THE CONTEXT OF THIS CASE AND THE INTERPRETATION OF THE UM STATUTE BY THE MISSISSIPPI SUPREME COURT, SPRADLIN'S AND CAGE'S INJURIES DID ARISE OUT OF THE USE OF A MOTOR VEHICLE BY AN UNINSURED OPERATOR.
Finding under Mississippi law there is no uninsured motorist coverage for such an incident, we affirm the lower court's ruling and grant of summary judgment to State Farm.

STATEMENT OF FACTS
On the afternoon of March 22, 1990, Cage and Spradlin were at Po-Boy's Restaurant on Highway 82 in Leland, Mississippi, playing pool with Scotty Giachelli who was known to be a good player. After they had been there for some time, Donald Wise, his brother Robbie Wise and Larry Edwards came in and wanted to play pool against Giachelli. Giachelli refused. An argument ensued and a fight broke out between Cage and Donald Wise. After the fight ended Cage went out into the parking lot. He stated in his deposition that the Wise brothers and Edwards came out after him and two of them had something in their hands that he thought were bricks. Cage took a rifle out of the car he had driven to the restaurant and told them to get in their car and leave. They did. Cage went back inside the restaurant. He and Spradlin left about 45 minutes later.
After leaving the restaurant, the Wise brothers and Edwards went to Donald Wise's *1385 house. While there, Donald Wise got his Remington 12-gauge shotgun and loaded it. The three men then went back to Leland in Donald Wise's uninsured 1980 Cadillac. Donald Wise was driving the car and Robbie Wise was in the front passenger seat holding the shotgun. When they approached the intersection of Highways 82 and 61, Donald Wise spotted Cage and Spradlin turning onto Highway 61 North, a four-lane highway. While traveling down Highway 61, Donald Wise accelerated and pulled up beside the car driven by Cage and instructed his brother to shoot. Robbie Wise then fired one or more shots into the car driven by Cage and occupied by Spradlin. As a result of the shots fired into the car both Cage and Spradlin sustained bodily injuries. There was never any contact between the two vehicles. Donald Wise continued driving north on Highway 61 and did not stop until he was back at his house.
When the first shot was fired Cage put his foot on the brake, but was unable to continue driving the car. Spradlin pushed Cage over and managed to turn the car around and drive back to Po-Boy's Restaurant where an ambulance was called. Both Cage and Spradlin were hospitalized because of their injuries.

STANDARD OF REVIEW
In determining whether the trial court properly granted a motion for summary judgment this Court conducts a de novo review of the record. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); Mantachie Natural Gas District v. Mississippi Valley Gas Company, 594 So.2d 1170, 1172 (Miss. 1992).
A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. A fact is material if it "tends to resolve any of the issues, properly raised by the parties." Webb v. City of Newton, 583 So.2d 946, 949 (Miss. 1991) (citing Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) (quoting Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987)). The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss. 1993).
In the case at bar, there is no genuine issue of material fact. The parties agreed on all factual issues and in fact set them out in a written stipulation. The only matter to be determined is whether the trial court erred in holding that as a matter of law, Cage and Spradlin were not entitled to recover under the uninsured motorist coverage of the State Farm policy for bodily injuries resulting from the shooting.

DISCUSSION OF THE ISSUES
Cage and Spradlin, the appellants, argue that by the language in its insurance policy, State Farm restricted, reduced or cut down the uninsured motorist coverage mandated by the Mississippi Uninsured Motorist Act, Miss. Code Ann. § 83-11-101. The applicable portion of § 83-11-101 reads as follows:
(1) No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law .. .
The State Farm policy involved here reads in pertinent part:

*1386 We will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
The appellants contend that pursuant to the Mississippi's UM statute they were eligible to recover for bodily injuries they sustained when the insured vehicle they were traveling in was shot into by the occupants of an uninsured vehicle. This Court has twice held, in Roberts v. Grisham, 487 So.2d 836 (Miss. 1986) and Coleman v. Sanford, 521 So.2d 876 (Miss. 1988), that a shooting of an insured driver by an uninsured motorist did not arise out of the ownership, maintenance or use of that vehicle and therefore did not fall under the UM coverage of the insurance policies at issue in those cases.
In Roberts v. Grisham, 487 So.2d 836 (Miss. 1986), Grisham and Roberts had previously had a dispute concerning some work done by Grisham for Roberts. Grisham followed Roberts down a gravel road until Roberts parked in front of a house. Grisham pulled up behind Roberts, got out of his car and talked to Roberts who was still sitting in his truck. Grisham then fatally shot Roberts in the head.
Roberts' widow and child sought to recover under Roberts' uninsured motorist coverage, claiming Grisham used his uninsured vehicle to block Roberts' truck, preventing his escape. This Court held that the shooting was a voluntary, deliberate and independent act that did not arise out of the ownership, maintenance or use of the uninsured vehicle. The Court went on to hold that there was no causal connection between the shooting and the uninsured vehicle, that the use of the vehicle was incidental.
In Coleman v. Sanford, 521 So.2d 876 (Miss. 1988), the facts are even more similar to those of the case at bar. In that case Coleman and Sanford were involved in a minor collision. Once the police arrived they allowed Coleman to leave but asked Sanford to pull his truck off the road so a sobriety test could be administered. Instead of pulling off the road as instructed, Sanford began following Coleman. When Sanford caught up with Coleman's vehicle he moved to the right shoulder of the road and accelerated until he was just ahead of Coleman. With both vehicles moving Sanford shot through Coleman's windshield with a handgun, seriously injuring Coleman.
Coleman sought to recover for his injuries through his uninsured motorist coverage. Coleman argued that his case was distinguishable from Roberts because Sandford used the uninsured vehicle to catch up with him and Sanford was actually driving it when he shot him. This Court refused to accept Coleman's rationale stating, "[i]n spite of those facts, the shooting was still, in the language of Roberts, a voluntary, deliberate act which rendered use of the vehicle incidental." Coleman, 521 So.2d at 877.
Cage and Spradlin maintain that Roberts and Coleman are not good law, arguing that they were decided solely on the policy language and did not address or take into consideration the issue of whether or not there was a conflict between the UM coverage in the policy and that required by Mississippi's UM statute. The appellants maintain that the statute does not limit uninsured motorist coverage to bodily injuries "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle" and that this policy language restricts and/or reduces the scope of the coverage mandated by the statute.
The appellants correctly point out that this Court has long ago ruled that an insurer cannot limit, restrict or reduce the coverage requirements of the UM statute by omitting language or inserting restrictive language into its insurance policies. As we said in State Farm Mutual Automobile Ins. Co. v. Nester, 459 So.2d 787, 789 (Miss. 1984), "[a]ny attempt to contractually limit an insurer's duty of coverage is necessarily confined to the boundaries of the statute and *1387 may not be effective to narrow the requirements of that statute." See also, Gunn v. Principal Casualty Ins. Co., 605 So.2d 741, 742 (Miss. 1992); Talbot v. State Farm Mutual Automobile Ins. Co., 291 So.2d 699, 701 (Miss. 1974). Although the appellants cite these and other cases[4] where this court has held void certain policy restrictions, none of those cases dealt with the seemingly standard language used in insurance policies requiring that for bodily injury or property damage to fall under its UM coverage, the injury or damage must arise out of the ownership, maintenance or use of an uninsured motor vehicle.[5]
The question then is whether the "arising-out-of" language is restrictive, thus having the effect of limiting the UM coverage intended by the UM statute. Even though the UM statute does not specifically set out what connection must exist between the injury and the uninsured vehicle, it is unreasonable to believe that no such connection is necessary. If no connection was needed the range of events covered by the statute would be unlimited, as long as the person causing the injury to an insured owned an uninsured motor vehicle, whether or not that vehicle was involved in any way or even in the same county at the time of the injury. Logically, this cannot be what the legislature intended when enacting the UM statute.
In Harris v. Magee, 573 So.2d 646, 651 (Miss. 1990), this Court stated, "[t]he purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the injured party would have if injured by an insured person." See also, Payne, 603 So.2d at 345. So, what protection does a person injured by a financially responsible, insured person have? Miss. Code Ann. § 83-11-101 sets the limits for UM coverage to be "no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law," Miss. Code Ann. § 63-15-1 et seq. Mississippi's Motor Vehicle Safety Responsibility Law provides in part that an owner's policy of liability insurance which has been certified as proof of financial responsibility
shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle ...
Miss. Code Ann. § 63-15-43(2)(b) (emphasis added).
As can be seen emphasized above, the Motor Vehicle Safety Responsibility Law, in setting out the minimum requirements for motor vehicle liability policies certified as proof of financial responsibility, uses almost the exact language as the State Farm policy at issue here and has the same effect. The mandatory liability coverage extends only to those damages arising out of the ownership, maintenance or use of the insured motor vehicle. The language in State Farm's policy does not narrow the limits of coverage beyond this point. Therefore, its use of the "arising-out-of" language satisfies the intent and purpose of the UM statute by providing "the same protection to one injured by an uninsured motorist as that individual would have if injured by a financially responsible driver." Payne, 603 So.2d at 345 (quoting Lawler v. Government Employees Insurance Co., 569 So.2d 1151, 1153 (Miss. 1990)).
The appellants, without citing authority, argue that the UM statute does not incorporate *1388 the Motor Vehicle Safety Responsibility Act except as to the minimum amount of coverage required and not as to what type of damages are covered. They point out that the Motor Vehicle Safety Responsibility Act at § 63-15-43(7) provides that coverage in excess of that required under the act is not subject to the provisions of the act. The appellants maintain that UM coverage is coverage in addition to that required under the Motor Vehicle Safety Responsibility Act and therefore not subject to its provisions.
State Farm does not argue that the UM statute is subject to the provisions of the Motor Vehicle Safety Responsibility Act, only that the minimum amount of coverage required is the same as that set out in that act. The UM statute clearly states that the limits of UM coverage shall be no less than those set forth in the Motor Vehicle Safety Responsibility Act. Section 63-15-43(2)(b) of that act sets the minimum required coverage as "all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle... ." The UM statute merely uses the Motor Vehicle Responsibility Safety Act as a guide to the statutory minimum amount of coverage required. This issue is without merit.
Cage and Spradlin make the alternative argument that their injuries did arise out of the use of an uninsured motor vehicle. Cage and Spradlin cite several cases from other jurisdictions that have held UM coverage to apply to injuries sustained by an insured in a shooting incident involving a uninsured motor vehicle.[6] There is split authority on this issue and several jurisdictions have adopted rules similar to Mississippi's.[7] It is Cage and Spradlin's argument that their injuries were caused, at least in part, by the use of Donald Wise's uninsured vehicle since that vehicle made it possible for the Wises to catch up with them and shoot into the car in which they were traveling.
This is the same argument which we refused to accept in Coleman. In that case the Court held "[i]n spite of those facts, the shooting was still, in the language of Roberts, a voluntary, deliberate act which rendered use of the vehicle incidental." 521 So.2d at 877. The Court in Coleman made a point of stating that although there were cases from other jurisdictions holding to the contrary, "in Mississippi Roberts controls." Id. It is clear from this language that this Court took into consideration the holdings of other jurisdictions before sustaining the rule adopted in Roberts. The Roberts Court also considered cases from other jurisdictions and cited those in the opinion. It can be seen from these cases that this Court has already deliberated both sides of this issue and made an informed decision that the shootings in those cases did not arise out of the ownership, operation or use of the uninsured motor vehicle.

CONCLUSION
The "arising-out-of" language in the State Farm policy did not narrow the limits of UM coverage intended under Mississippi's UM statute. The UM coverage under the policy upheld the intent of the statute by affording to a person injured by an uninsured motorist the same protection he would have if injured by a financially responsible driver.
The shooting did not arise out of the operation, use or maintenance of an uninsured motor vehicle. It was an intentional act and the use of a vehicle was merely incidental.
*1389 For the foregoing reasons both issues are without merit and this case is affirmed.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
For the reasons expressed in my dissent to the companion case, Spradlin v. Atlanta Casualty Company, 650 So.2d 1389 (Miss. 1995), I respectfully dissent.
NOTES
[1] Spradlin also filed suit against Atlanta Casualty Company, his own uninsured motorist insurer, basing his claim on the same facts. The Circuit Court denied a motion to join the claim against Atlanta Casualty with that against State Farm. Subsequently, the lower court granted summary judgment in favor of Atlanta Casualty from which Spradlin has also appealed. See, Spradlin v. Atlanta Casualty Company, 650 So.2d 1389 (Miss. 1995).
[2] Also named as defendants were Robbie Wise and Donald Wise, the driver of the uninsured vehicle from which the shots were fired.
[3] The claims against defendants Robbie Wise and Donald Wise were not adjudicated in this proceeding and do not concern us on this appeal.
[4] Atlanta Casualty Co. v. Payne, 603 So.2d 343, 345-46 (Miss. 1992); Harris v. Magee, 573 So.2d 646 (Miss. 1990); Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988); Preferred Risk Mutual Ins. Co. v. Poole, 411 F. Supp. 429 (N.D.Miss. 1976); Missouri General Ins. Co. v. Youngblood, 515 F.2d 1254 (5th Cir.1975); Lowery v. State Farm Mutual Automobile Ins. Co., 285 So.2d 767, 770, 777 (Miss. 1974); United States Fidelity & Guaranty Co. v. Gough, 289 So.2d 925, 926-27 (Miss. 1974); Harthcock v. State Farm Mutual Automobile Ins. Co., 248 So.2d 456 (Miss. 1971).
[5] The State Farm policy reads slightly differently in that it says, "operation, maintenance or use... ." (emphasis added).
[6] Ganiron v. Hawaii Ins. Guaranty Assn., 69 Haw. 432, 744 P.2d 1210 (1987); Continental Western Ins. Co. v. Klug, 415 N.W.2d 876 (Minn. 1987); Fortune Ins. Co. v. Ferreiro, 458 So.2d 834 (Fla.App. 3d Dist. 1984).
[7] See, State Farm Mut. Auto Ins. Co. v. Spotten, 610 N.E.2d 299 (Ind. App. 1993); Collier v. Employers Natl. Ins. Co., 861 S.W.2d 286 (Tex. App. 1993); State Farm Mut. Auto Ins. Co. v. Nolen, 857 S.W.2d 37 (Tenn. App. 1993); Ruiz v. Farmers Ins. Co., 177 Ariz. 101, 865 P.2d 762 (1993); Ulrich v. United Services Auto Assn., 839 P.2d 942 (Wyo. 1992); Curtis v. Birch, 114 Ill. App.3d 127, 69 Ill.Dec. 873, 876-77, 448 N.E.2d 591, 594-95 (1983); United States Fidelity & Guaranty Co. v. Western Fire Ins. Co., 450 S.W.2d 491, 493 (Ky. Ct. App. 1970).