MYERS, J.,
for the Court.
¶ 1. Alfa Insurance Corporation appeals from a final judgment of the Circuit Court of Forrest County for the plaintiff, Kenneth Wayne Ryals, as administrator on behalf of the wrongful death beneficiaries of Kenneth Ryals and Georgia Ryals, and an award of $210,000 for each of the deaths. Aggrieved by the judgment, Alfa raises three issues on appeal.
ISSUES PRESENTED
I. Whether the Ryals family is barred from recovering uninsured motorist benefits from Alfa?
II. Whether the Ryals family is entitled to recover uninsured motorist benefits as the deaths were not caused by an accident arising out of the ownership, maintenance, or use of the Mississippi Department of Transportation platform truck as required by the Alfa insurance agreement?
III. Did the trial court err by admitting the testimony of Richard Hagenson, the Ryalses’ expert witness?
STATEMENT OF FACTS
¶ 2. On April 28, 1998, Kenneth Ryals and his wife, Georgia Ryals, sustained fatal injuries as they were traveling north on Highway 49, near Hattiesburg, Mississippi. A dead pine tree fell across the cab of their truck and the couple was killed instantly. On July 26, 1999, Kenneth Wayne Ryals, co-administrator of the Ryalses’ estates, filed wrongful death complaints against the Mississippi Department of Transportation (MDOT) and the Mississippi Transportation Commission. The complaints alleged that the Ryalses’ deaths were caused by MDOT’s failure to provide reasonably safe highways and that prior to the accident, MDOT employees left a dead pine tree standing in a weakened condition after several attempts to knock the tree down with a platform truck were unsuccessful.
¶ 3. The two cases were consolidated and an amended complaint was filed to include Alfa as a co-defendant. The Ryalses had automobile insurance coverage with Alfa which included an uninsured motorist provision. The Ryals family sought uninsured *679 motorist benefits from Alfa because MDOT admitted that its platform truck was not covered by insurance. Alfa answered the Ryalses’ complaint and alleged that the wrongful death beneficiaries were not entitled to recover from Alfa because MDOT was immune from suit under the Mississippi Tort Claims Act, therefore the Ryals family was not “legally entitled to recover” under the Alfa policies. Alfa also filed a cross-claim against MDOT for sub-rogation of the Ryalses’ claims.
¶ 4. The trial was set for August 2002; however, MDOT settled with the Ryals family for $250,000, the statutory limit set by the Mississippi Tort Claims Act. The trial judge entered an agreed order of dismissal in May 2002. Alfa agreed to dismiss its counter-claim against MDOT but specifically reserved the right to use MDOT’s sovereign immunity claim as a defense in its suit against the Ryals family. A jury trial was held against the remaining defendant, Alfa, and the jury returned a unanimous verdict for the Ryals family and awarded a recovery of $210,00 for each death (the maximum amount recoverable under Alfa’s uninsured motorist policy). Alfa timely filed its motion for JNOV or alternatively for a new trial, which was denied by the trial court.
LEGAL ANALYSIS
I. WHETHER THE RYALS FAMILY IS BARRED FROM RECOVERING UNINSURED MOTORIST BENEFITS FROM ALFA?
¶ 5. Alfa asserts that the Ryals family is barred from recovering uninsured motorist benefits under the Alfa policy because they do not meet the standard of being “legally entitled to recover.” Alfa’s position is that the Ryalses are not “legally entitled to recover” because they have received all they are entitled under the Mississippi Tort Claims Act.. Conversely, the Ryals family asserts that they are entitled to uninsured motorist benefits from Alfa because the measure of their damages claim arising from the fatality was stipulated at over $670,000 and they only received the statutory cap of $250,000 from MDOT.
¶ 6. The basis of Alfa’s argument is that the Ryalses are not “legally entitled to recover” uninsured motorist benefits because they have already received the statutory cap of $250,000 from MDOT. The applicable uninsured motorist statute states:
No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from ' the owner or operator of an uninsured motor vehicle....
Miss.Code Ann. § 83-11-101(1) (Rev.1999). The provision in the Ryalses’ insurance policy issued by Alfa contained the following language:
We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
1. Bodily injury sustained by an insured and caused by an accident; and
2. Property damage caused by an accident of the Schedule or Declaration indicates that both bodily injury and property damage Uninsured Motorist Coverage applies. The owner’s or operator’s liability for these damages must arise out- of the ownership, maintenance, or use of the uninsured motor vehicle.
Alfa cites many workers’ compensation cases in support of its proposition that the Ryalses are not legally entitled to recover uninsured motorist benefits.
*680 ¶7. Several cases have been decided relating to the interplay of workers’ compensation and uninsured motorist benefits. Workers’ compensation benefits received by the employee barred recovery under the employer’s uninsured motorist policy because the phrase “legally entitled to recover” has been interpreted to mean the insured is entitled to recover at the time of the accident. Medders v. U.S. Fid. and Guar. Co., 623 So.2d 979, 989 (Miss.1993). The employee was not entitled to recover uninsured motorist benefits from his insurer because workers’ compensation is the employee’s exclusive remedy. Wachtler v. State Farm Mut. Auto. Ins. Co., 835 So.2d 23, 27 (¶ 16) (Miss.2003); Steen v. Metro. Prop, and Cas. Ins. Co., 858 So.2d 186, 189 (¶ 15) (Miss.Ct.App.2003). The purpose of the uninsured motorist statute is to allow the insured to get all sums he is legally entitled to recover. McDaniel v. Shaklee U.S., Inc., 807 So.2d 393, 398-99 (¶ 17) (Miss.2001).
¶ 8. Alfa draws a parallel between workers’ compensation cases and cases dealing with the Mississippi Tort Claims Act. Alfa argues that like worker’s compensation, sovereign immunity bars the insured from receiving uninsured motorist benefits because the Mississippi Tort Claims Act provides the exclusive remedy against the government and its employees for torts. Alfa acknowledges that sovereign immunity may be statutorily waived, as was done in this case by MDOT, but argues that the statutory cap of $250,000 should remain the insured’s exclusive remedy. While it is attractive to group workers’ compensation cases together with sovereign immunity cases, the two are distinctly different and each should be decided by its own precedent.
¶ 9. The Ryals family argues that the case of City of Jackson v. Perry, 764 So.2d 373 (Miss.2000), holds precedential value for their claim of uninsured motorist benefits against Alfa. In Perry, the driver brought suit against a police officer, the city and the uninsured motorist carrier for an accident involving a speeding officer who hit the driver while going to dinner. Perry, 764 So.2d at 375(112). The court held that the officer was driving with a “reckless disregard for the safety of others” which waived sovereign immunity under the Mississippi Tort Claims Act. Id. at 378 (¶ 19). The court opined that since the reckless disregard exception to the MTCA did apply, the city was liable for $50,000 (then the statutory maximum) and the uninsured motorist carrier was liable for $50,000 (the policy limits). Id. at 381 (¶ 38).
¶ 10. Both parties briefed the Perry case and each hold different views on its precedential value. Alfa claims that since Perry was decided by a split vote, it is not binding precedent. Our supreme court recently held that 4-4 decisions are good law and binding precedent. Bridges v. Park Place Entm’t, 860 So.2d 811, 814(¶9) (Miss.2003) (citing Harper v. Harper, 491 So.2d 189,' 202 (Miss.1986)). The Ryalses argue that similar to Perry, the waiver of immunity by MDOT meant that the insured was “legally entitled to recover” from MDOT up to the statutory cap of $250,000. The Ryalses contend that if the damages claim totals above and beyond the cap, the uninsured motorist funds should be available as funds not collectible from the tortfeasor.
¶ 11. The Uninsured Motorist Act is remedial in nature and its purpose is to “give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy.” Glen-non v. State Farm Mut. Auto. Ins. Co., 812 So.2d 927, 930 (¶ 18) (Miss.2002) (citing *681 Rampy v. State Farm Mut. Auto. Ins. Co., 278 So.2d 428, 432 (Miss.1973)). The provisions of the Act are to be liberally construed to accomplish this purpose. Id. At trial, the parties stipulated that the Ryals-es’ claims for the wrongful deaths of their parents exceeded $670,000. Defining the term “legally entitled to recover” in the context of sovereign immunity is problematic. There has been no distinction made between liability or fault and financial responsibility or collectability. The Ryalses argue that uninsured motorist benefits should be recoverable if the tort-feasor, regardless of whether a person or state entity, is at fault or legally liable for the damages. Alfa contends that the benefits should be recoverable in limited situations where the tortfeasor is financially responsible.
¶ 12. Based upon the remedial purposes of the Uninsured Motorist Act and the stipulated damages which well exceed the $250,000 settlement with MDOT, the Ryalses were entitled to receive uninsured motorist benefits from Alfa according to the automobile insurance policy,
II. WHETHER THE RYALS FAMILY IS ENTITLED TO RECOVER UNINSURED MOTORIST BENEFITS AS THE DEATHS WERE NOT CAUSED BY AN ACCIDENT ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE, OF THE MISSISSIPPI DEPARTMENT OF TRANSPORTATION PLATFORM TRUCK AS REQUIRED BY THE ALFA INSURANCE AGREEMENT?
¶ 13. Alfa contends that the Ryals family is barred from recovering uninsured motorist benefits because the deaths were not caused by an accident arising out of the ownership, maintenance, or use of the MDOT platform truck as required by the Alfa insurance policy. The Ryals family contends that the issue should be decided based on contract principles and that contractual definition of “use” has been decided by prior caselaw.
¶ 14. Alfa’s insurance policy required that in order to recover UM benefits, the insured must establish that the injuries arose out of the ownership, maintenance, or use of the uninsured motor vehicle. It is clear that the deaths did not result from the ownership or maintenance of the platform truck. What is disputed is whether the deaths resulted from the use of the truck. Alfa relies on the case of Spradlin v. State Farm Mutual Automobile Insurance Co., 650 So.2d 1383 (Miss.1995), for its position that the Ryalses did not establish that the deaths arose out of the use of the MDOT truck. Alfa claims that the use of the truck was “incidental” to the “intentional acts” of the MDOT employees who pushed the tree with the truck. Spradlin involved an UM claim when shots were fired from an uninsured motor vehicle into an insured vehicle causing personal injury. Spradlin, 650 So.2d at 1384. The court held that the use of the vehicle was merely incidental to what was an intentional and deliberate act. Id. at 1388.
¶ 15. The Ryalses argue that the issue is one of contract construction. They contend that the issue turns on whether using the MDOT truck to push the tree was a ‘use’ of the truck within the meaning of the policy. The Ryalses cite Jackson v. Daley, 739 So.2d 1031 (Miss.1999), to support their contention that the use of the MDOT truck caused the two deaths. In Jackson, the court explained “use” as follows: “When a policy insures an automobile for the “use” of the automobile, the chain of causation between the use of the automobile and the injury must be direct. We will not extend coverage if the use of the automobile is within the line of causation, but is distinctly remote.” Jackson, 739 So.2d at 1041 (¶ 40).
*682 ¶ 16. It is the role of the trial court, not the jury, to determine the meaning and the effect of an insurance contract if the contract is clear and unambiguous. Id. at 1041 (¶ 38) (citing Overstreet v. Allstate Ins. Co., 474 So.2d 572, 575 (Miss. 1985)). If the language in an insurance contract is clear and unambiguous, then the court should construe it as written. Id. (citing Lowery v. Guar. Bank & Trust Co., 592 So.2d 79, 82 (Miss.1991)). The language in the Alfa insurance policy states that it will pay for bodily injury which results from “the operation, maintenance, or use of a uninsured car.” The policy also defines the word use or used as “meaning the actual manual and physical driving of a car.” A car is defined by the policy as “a land motor vehicle with four or more wheels, which is designed for use mainly on public roads.”
¶ 17. The trial court held on Alfa’s motion for directed verdict that there was enough evidence for the jury to conclude that the use of the truck caused the deaths of Kenneth and Georgia Ryals. It was a factual question for the jury to decide whether or not the act of the MDOT truck pushing against the dead tree was the proximate cause of the accident. The jury heard testimony of Charles Finnegan, a bystander who testified that he saw an MDOT platform truck hitting a tree in the vicinity of where the Ryalses’ deaths occurred. Finnegan also stated that the crew was unsuccessful at pushing down the tree and left it standing. The jury also heard the testimony of Oscar Brown, an MDOT platform truck driver, who testified that sometimes the MDOT employees would disobey orders from their supervisors and push trees with the platform truck if they thought the trees were dead. Brown admitted that he was not always successful in pushing the trees over because the trees were not as rotten as they looked. Brown also testified that his crew was working in the area where the Ryalses were killed.
¶ 18. The jury also heard the testimony of Richard Hagenson, a forester who testified about his personal observations of the tree, the decay process in trees and observations he made about what caused the tree to decay as it did. After hearing all the evidence, the jury chose to decide that the Ryalses’ deaths arose out of the use of the MDOT truck.
¶ 19. T)he dissent focuses on the issue of causation for its proposition that the deaths of Kenneth and Georgia Ryals were not proximately caused by the use of the MDOT platform truck. The dissent correctly cites the cases of Merchants Company v. Hartford Accident & Indemnity Company, 187 Miss. 301, 188 So. 571 (1939) and Jackson v. Daley, 739 So.2d 1031 (Miss.1999), as authority on this issue. In both cases, the supreme court held that the chain of causation was not broken ' and therefore coverage was allowed. In Jackson, the court outlined two factors to be considered: 1) the chain of causation between the use of the automobile must be direct; and 2) the use must not be distinctly remote. Jackson, 739 So.2d at 1041 (¶ 40).
¶ 20. Similarly to Merchants and Jackson, we can find no break in the chain of causation in the Ryalses’ ease. There was no intervening superceding cause between the MDOT platform truck pushing on the tree and the tree falling on the Ryalses’ vehicle. The dissent focuses on evidence that the tree was-dead before it fell and therefore the cause of the falling tree was insect infestation and decay, not the force from the platform truck. Richard Hagen-son, a forester and expert witness, testified that the substantial factor contributing to the tree falling on the vehicle was the external force which pushed on the tree *683 prior to the fall, not the decay or rainy conditions.
¶21. The dissent also focuses on the issue of remoteness and states that because of a time lapse between the MDOT platform truck pushing on the tree and the tree falling on the Ryalses’ vehicle causing death the line of causation was distinctly remote. Remoteness goes to the issue of proximate cause and was a fact question for the jury’s determination. Hankins Lumber Co, v, Moore, 774 So.2d 459, 464 (¶ 11) (Miss.Ct.App.2000). The jury heard all the evidence presented and found liability as to Alfa. This issue is without merit.
III. DID THE TRIAL COURT ERR BY ADMITTING THE TESTIMONY OF RICHARD HAGENSON, THE RYALS-ES’ EXPERT WITNESS?
¶ 22. Alfa contends that the Ryals-es’ expert, Richard Hagenson, should not have been allowed to testify as an expert witness. Hagenson stated in voir dire that he had not conducted any scientific tests or studies to support his opinions, nor was he aware of any studies conducted by anyone on the matter. After conducting voir dire, Alfa objected to Hagenson being tendered as an expert in the field of forestry based upon the absence of tests or studies as a basis of his testimony. On appeal, Alfa asserts that Hagenson’s testimony should have been excluded as speculative.
¶ 23. Regardless of the reasons behind Alfa’s objection to Hagenson’s testimony, the admission of expert testimony is within the sound discretion of the trial judge. Roberts v. Grafe Auto Co., Inc., 701 So.2d 1093, 1098 (Miss.1997). Likewise, the decision as to whether a witness is qualified to testify as an expert is within the discretion of the trial court. Burnham v. Stevens, 734 So.2d 256, 268 (¶ 47) (Miss.Ct.App.1999). The decision will be reversed only when it amounts to an abuse of discretion. Sheffield v. Goodwin, 740 So.2d 854, 856(¶ 6) (Miss.1999).
¶ 24. Hagenson testified that he has a degree in forestry and has worked in that field for twelve years. Hagenson also testified that he went to the accident site and personally viewed the tree. After much consideration and arguments by both sides, the trial court concluded that Ha-genson could testify as to general forestry issues that were in his realm of knowledge such as what causes decay in trees, which stage of decay the tree that caused the accident was in and that some external force hastened the decay process in the tree. Hagenson was allowed to give testimony as to his personal observations of the tree. Addressing Alfa’s concerns that Ha-genson should not be allowed to testify about the amount of force applied to the tree or what specific object applied the force, the trial court did not allow Hagen-son to testify on those subjects. The trial court concluded that the issue was one for the jury to determine based on the testimony of other witnesses. Mr. Hagenson was not allowed to testify specifically on force because that went beyond his expertise in forestry.
¶ 25. Alfa also called an expert witness, Gerald Moore, who discussed his opinions concerning the decay found in the tree. Moore was permitted to offer testimony on identical issues as Hagenson. Although Moore opined that the tree was in later stage of decay, the trial court considered the issue to be one for the jury’s determination for they are given the task of giving weight to testimony. The Ryalses claim that the issue amounts to a “battle of the experts” with the jury choosing to give Hagenson’s testimony more weight than Moore’s testimony.
*684 ¶ 26. Rule 702 of the Mississippi Rules of Evidence states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
M.R.E. 702. . According to Rule 702, expert testimony should be admitted if it passes a two-prong test: (1) the witness must be qualified by virtue of his of her knowledge, skill, experience or education, and (2) the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue. Miss. Tramp. Comm’n v. McLemore, 863 So.2d 31, 35(¶ 7) (Miss. 2003).
¶ 27. Hagenson testified that he earned a degree in forestry and had worked in that field for twelve years. Clearly, Ha-genson was qualified to testify as an expert in the field of forestry. His testimony was helpful to the jury on the issue of what caused the tree to fall and fatally injure the Ryalses. The trial judge limited Hagenson’s testimony to those forestry issues within his knowledge and his personal observations of the tree. He was not allowed to give testimony outside his expertise and education. The trial court did not abuse its discretion by allowing Hagenson to testify as an expert witness.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., THOMAS, LEE, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND SOUTHWICK, P.JJ. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.