**Emmette BRYANT, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. S90–0285(G).**

United States District Court,
S.D. Mississippi, S.D.

March 18, 1991.

————

Matt Lyons and Bob Tyler, Biloxi, Miss., for plaintiff.

Mark Garriga, Gulfport, Miss., for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

The plaintiff, Emmette Bryant, brings this action for breach of contract and tortious breach of contract against his insurer, defendant Allstate Insurance Company [Allstate]. Allstate now moves for summary judgment, or in the alternative, for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. After due consideration of the arguments of counsel, evidence of record, applicable law, and being otherwise fully advised in the premises, this Court finds that the motion for summary judgment is well-taken and should be granted.

### Statement of Facts

The facts in this case are largely undisputed at this point. Bryant owned a 1987 Chevrolet Astro van which was insured by Allstate under a policy numbered 0 15 847429 which provided $2,000 in medical payments coverage [medpay] as well as uninsured motorist benefits. On or about December 5, 1989, Bryant was driving his van down Forest Avenue in Gulfport, Mississippi, when an individual came out of a nearby house carrying two shotguns. This individual proceeded to shoot the plaintiff, injuring his left arm and causing damage to the van. The plaintiff applied a tourniquet to his arm and drove himself to the hospital.

Subsequently, the plaintiff presented a claim under his policy of insurance for the property damages sustained by the van. This claim was processed and paid pursuant to the comprehensive auto coverage in the policy. Additionally, the plaintiff presented a claim under the medpay provisions for his injuries and treatment therefore as a result of his gunshot wound. Allstate instigated an investigation of the claim and the applicable coverage under the policy. On April 12, 1990, the medpay claim was denied as not coming within the terms of the medpay provision.

On June 25, 1990, Bryant filed a complaint in the United States District Court for the Southern District of Mississippi, Southern Division, to recover benefits and

damages against Allstate. The complaint alleges that the plaintiff made a claim for medical payment benefits with the defendant under the policy and that the claim was denied by the defendant without a legitimate or arguable reason. Consequently, the plaintiff prays for compensatory as well as extracontractual and punitive damages.

### Conclusions of Law

■ A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). Here, as previously noted, there are no disputes in the facts giving rise to this litigation. However, what is disputed is the extent to which the policy of insurance at issue covers the medical expenses. Where a contract is clear and unambiguous, its meaning and effect are matters of law which may be determined by the Court. *Overstreet v. Allstate Insurance Company*, 474 So.2d 572, 575 (Miss.1985). The question of interpretation, even though the parties may disagree regarding meaning and import of these terms, is one of law. *Shaw v. Burchfield*, 481 So.2d 247, 252 (Miss. 1985). Accordingly, this Court finds that the controversy at issue here is one particularly susceptible to resolution by the summary judgment mechanism.[1]

When Allstate denied Bryant's claim for medpay, it relied upon the following provision in the policy:

Allstate will pay to or on behalf of an insured person all reasonable expenses actually incurred by that person for necessary medical treatment, medical services, or medical products actually rendered. Ambulance, hospital, medical, surgical, x-ray, dental, orthopaedic and prosthetic devices, pharmaceutical, eye glasses, hearing aids, funeral service expenses, and professional nursing services are covered. *Payments will be made only when bodily injury, sickness, disease or death is caused by an auto accident.* (Emphasis added).[2]

(Policy, p. 8). Allstate's position is that this insuring clause creates a prerequisite for coverage. That is the injury suffered must be causally connected to an automobile accident. Clearly, the wording can be interpreted no other way. The key phrase "is caused by an auto accident," on its face, implies such a connection. Further, an examination of case law also supports the requirement of the causal connection.

■ Since jurisdiction is vested in this Court by virtue of diversity of citizenship, this Court is *Erie*–bound to apply the substantive law of Mississippi. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court notes an absence of Mississippi jurisprudence on the meaning of "is caused by an auto accident" or the scope of the causal connection required by its inclusion in the medpay portion of a policy. Therefore, the Court must make an *Erie* guess as to how the Mississippi Court would interpret this phrase. In order to do that, this Court can look to (1) state court decisions and Supreme Court dicta; (2) the lower court ruling (moot in this instance); (3) the general rule on the issue; (4) the rule in other states Mississippi looks to when it formulates its substantive law; and (5) other available legal sources, such as treatises and law review commentaries. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986); *Hill v. London, Stetel-*

---

1. As part of the response to the motion for summary judgment, the plaintiff argues that he should be allowed to conduct discovery before the Court resolves this issue. However, the plaintiff has not indicated, pursuant to Federal Rule of Civil Procedure 56(f), what facts he would discover to create a question of fact on this coverage issue. Therefore, this Court declines the request for Rule 56(f) relief.

2. The plaintiff has attempted to argue that the policy is ambiguous by citing to the definitional portion of the policy. However, when reading both sections together, this Court finds no such ambiguity. The medpay clause restricts what would otherwise be broader coverage.

*man, and Kirkwood, Inc.,* 906 F.2d 204 (5th Cir.1990).

In the instant case, the defendant relies upon two Mississippi cases involving uninsured motorist benefits which hold that where the automobile simply serves as the situs of the incident, the intentional tort which causes the injury does not have a sufficient causal connection to the automobile to afford coverage under an automobile policy. In *Roberts v. Grisham,* 487 So.2d 836 (Miss.1986), the decedent was sitting in his vehicle when his assailant, Grisham, walked over to the driver's side of the truck of the decedent and shot him in the head, inflicting a fatal wound. *Roberts,* 487 So.2d at 837. Roberts' heirs sought uninsured motorist coverage under the decedent's policy. That policy explicitly stated:

> The owner's or operator's liability for these damages must *arise out of the ownership, maintenance or use of the uninsured motor vehicle.* (Emphasis added).

*Roberts,* 487 So.2d at 837. The court held that deliberate, voluntary acts such as Grisham's assault render a vehicle's use incidental to the occurrence. Accordingly, the injury did not arise out of the use of the insured vehicle. *Id.* at 839. The Mississippi court quoted with approval the Alabama decision of *American Liberty Ins. Co. v. Soules,* 258 So.2d 872 (1972) in which a woman was shot by a deputy sheriff as she sat in an automobile. The Alabama court denied recovery holding that the injury was not connected with the use of an automobile and that the auto "was merely the situs of the accident which could as well have occurred in any other location." *Roberts,* 487 So.2d at 839, (quoting *Soules,* 258 So.2d at 875–76). In *Roberts,* the Mississippi court also found that there was no "causal connection" between the shooting and the use of an automobile. *Roberts,* 487 So.2d at 839.

*Roberts* was reaffirmed by the Mississippi Supreme Court in *Coleman v. Sanford,* 521 So.2d 876 (Miss.1988). There, the insured was shot with a hand gun fired by a belligerent motorist. The plaintiff's policy contained a limiting clause like the one in *Roberts.* The Mississippi court then affirmed the summary judgment granted for the insurer by holding that the shooting was "a voluntary, deliberate act which rendered use of the vehicle incidental." *Coleman,* 521 So.2d at 877.

■ This Court is mindful of Bryant's differentiation between his case and that presented in *Roberts* and *Coleman.* They are, after all, not medpay cases, and the courts treated very different policy provisions than what is at issue here. However, the trend is clear. The Mississippi court would probably not find a causal connection between an independent, intentional tortious act and an automobile in factual scenarios like the one *sub judice* in the context of a similarly worded medpay clause. When any party inflicts injury which is totally unrelated to the use of that vehicle, no causal connection exists between the vehicle and that injury.

The plaintiff here is also correct when he states that the medpay provision in the instant case does not require that the injury arise out of the ownership, maintenance or use of an automobile. However, what the policy does require is that the injury be "caused by an auto accident." In a case relied on by the plaintiff but to be distinguished, *infra,* the Florida court correctly notes that "... the term 'arising out of' is broader in scope than the words 'caused by.'" *Novak v. Government Employees' Ins. Co.,* 424 So.2d 178, 179 (Fla.App.1983). Accordingly, if a particular injury or event does not arise out of a factor, it cannot be caused by it. Therefore, this Court finds that the phrase "caused by an auto accident" is more restrictive than the clauses interpreted in *Roberts* and *Coleman.*

The plaintiff is correct when he argues that the Court must view the accidental nature of the injury from the injured's point of view. In *Georgia Casualty Co. v. Alden Mills,* 127 So. 555 (Miss.1930) the court considered whether an intentional assault upon the injured party was an accident for purposes of a liability policy. In resolving this issue the court observed:

The question, therefore, is whether a person who has been assaulted and injured by another, without any provocation on his part, has suffered an accidental injury. There is a diversity of opinion of this question among the courts, but the great weight of authority, and we think the better reasoned cases, holds that injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted—that in injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident.

\* \* \* \* \* \*

Whether an injury is accidental is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or provocation, then as to him the injury is accidental.

*Georgia Casualty*, 127 So. at 557. *See also Coleman v. Sanford, supra.* Here, there is no contest but that the injury received by Bryant was an accidental injury. In fact, Allstate does not seriously contest this point.

The key in this case lies in the verb and the modifier in the clause at issue. The verb is "caused by." As previously stated, that encompasses a restrictive concept in terms of the connection between the automobile and the injury. However, the adjective "auto" further narrows the scope of covered accidents. When the question, "What kind of accident?" is posed, the only answer is an "automobile accident." This clearly means more than just any accidental injury. It means only one related to an automobile in some fashion. In the instant case, the only relation of the insured automobile with the injury is that the automobile served as the situs of the injury. That simply is not enough. The automobile had nothing to do with the fact that Bryant was shot. In no way can this "accident" be considered an "auto accident." As a matter of example, this Court takes note of a Georgia case where the victim was assaulted in her car by the tortfeasor, and then she was run over by the tortfeasor driving her automobile. The court held that the injuries "arose from" the use of the automobile. *American Protection Ins. Co. v. Parker*, 150 Ga.App. 732, 258 S.E.2d 540 (1979). That case is easily differentiated because the automobile was itself a tool to cause the injury. This is not so in the instant case.

The plaintiff here cites the Court to a line of cases which seem to hold that all that is required with respect to medical payments coverage under an automobile policy is a nexus between the automobile and the injury. *See Allstate Ins. Co. v. Gillespie*, 455 So.2d 617 (Fla.1984) and *Novak v. GEICO*, 424 So.2d 178 (Fla.1983). However, neither case was dealing with a limiting clause such as the one found in the case at bar. In *Gillespie*, the court was interpreting the phrase "claims for accidents *arising out of* the ownership, maintenance or use, loading or unloading" of the insured automobile. *Gillespie*, 455 So.2d at 619. The same is true of the *Novak* case, and the Mississippi Supreme Court in *Coleman* explicitly rejected the holding in *Novak*. *Coleman*, 521 So.2d at 876. Therefore, this Court finds neither case instructive as to what the Mississippi court would do with this question.

Finally, the plaintiff relies upon *State Automobile Mutual Ins. Co. v. Nichols*, 710 F.Supp. 1359 (N.D.Ga.1989) in which the insured was found lying in a pool of blood in a parking lot early one morning. Her car was found two miles away locked and unoccupied with a large pool of blood on the front passenger floorboard. Her assailant was convicted of first degree murder. After the girl's death, her parents made a claim for benefits under their personal automobile insurance policy for uninsured motorist benefits and medical payments. The court denied her claim for uninsured motorist benefits because her death did not arise out of the ownership, maintenance, or use of her automobile. However, with respect to the medpay portion of the policy, the court found that coverage was afforded. *Nichols*, 710 F.Supp. at 1364. However, the Nichols' policy only required that the injury be

caused by an accident and sustained by a covered person. The court then decidedly noted that the medpay provision did not require a causal link between the use of the vehicle and the injuries sustained. *Id.* In the instant case, the terms of the policy mandate that causal connection. *Nichols* is not helpful to the plaintiff.

For these reasons, this Court finds that the terms of the Allstate policy in the med-pay provisions require that here be a causal connection between the injury sustained and the covered automobile. The undisputed facts in the instant case do not meet this requirement as a matter of law. Consequently, the injuries suffered by Bryant are not of the type covered by the policy, and Allstate is entitled to summary judgment in its favor.

### Conclusion

The Court finds that the motion of Allstate for summary judgment is well-taken and should be sustained. The Court further concludes that each party should bear its own costs.

Counsel for defendant Allstate shall submit an order in conformity with the foregoing Memorandum Opinion within ten (10) days of the date of entry hereof.