# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01652-SCT

*ALFA INSURANCE CORPORATION*

**v.**

*KENNETH WAYNE RYALS,
ADMINISTRATOR ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF
KENNETH RYALS, DECEASED, AND
KENNETH WAYNE RYALS,
ADMINISTRATOR ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF
GEORGIA RYALS, DECEASED*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2002 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HERMAN M. HOLLENSED |
| ATTORNEYS FOR APPELLEE: | T. JACKSON LYONS |
| | NORMAN WILLIAM PAULI, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 07/21/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## EN BANC.

## WALLER, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Pursuant to a jury verdict, the Forrest County Circuit Court awarded $420,000 in

uninsured motorist benefits to Kenneth Wayne Ryals, administrator for the wrongful death

beneficiaries of Kenneth and Georgia Ryals.  Alfa Insurance Corporation, the uninsured

motorist insurance carrier, appealed, and a divided Court of Appeals affirmed the circuit

court judgment. *See Alfa Ins. Corp. v. Ryals*, 2004 WL 1326702 (Miss. Ct. App. June 15, 2004). Three judges dissented, concluding that the alleged negligent act did not cause the accident and that the accident did not arise from the use of an uninsured vehicle. *Id*. at \*7 - \*12 (Griffis, J., dissenting). After certiorari was granted, Alfa challenges the Court of Appeals' judgment on three grounds: (1) whether the case of *City of Jackson v. Perry*, 764 So. 2d 373 (Miss. 2000), was binding precedent; (2) whether UM benefits are recoverable when the uninsured motorist is immune from the plaintiff's claims; and (3) whether the accident arose out of the "use," as defined under the policy, of an uninsured vehicle. We find that the evidence was legally insufficient to prove that accident arose out of the "use" of the truck and therefore reverse and render. Because this one issue is dispositive, we do not address the other two issues.

## FACTS

¶2. Kenneth and Georgia Ryals were killed as a result of a dead pine tree falling on their vehicle as they were traveling north on U. S. Highway 49 near Hattiesburg, Mississippi. Kenneth Wayne Ryals, their son and co-administrator of their estates, filed two complaints[1] on behalf of the Ryalses' wrongful death beneficiaries against the Mississippi Department of Transportation[2] alleging that MDOT failed to provide safe highways and that its employees left a dead pine tree in an unsafe condition after unsuccessfully attempting to

---

[1]The two complaints were later consolidated.

[2]The Mississippi Transportation Commission was also a named defendant, but it is not a party to this appeal.

knock it down with a platform or bucket truck. Alfa, the Ryalses' auto insurance carrier, was added as a co-defendant. The beneficiaries alleged that Alfa was liable to them for the Ryalses' uninsured motorist benefits based on MDOT's admission that its bucket truck was uninsured. After MDOT settled the beneficiaries' claims against it for $250,000, the statutory maximum under the Mississippi Tort Claims Act, the case went to trial, and a jury awarded $420,000 in uninsured motorist benefits[3] in favor of the beneficiaries and against Alfa. After the Court of Appeals affirmed the circuit court's judgment, we granted certiorari.

## DISCUSSION

¶3.     In reviewing the denial of a motion for a judgment notwithstanding a verdict, we will consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the moving party that reasonable jurors could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. *3M Co. v. Johnson*, 895 So. 2d 151, 160 (Miss. 2005).

---

[3]The policy limits were $210,000, and the jury awarded $210,000 for each of the two deaths.

**WHETHER THE ALLEGED NEGLIGENT ACT TOOK PLACE DURING THE "USE" OF AN UNINSURED AUTOMOBILE.**

¶4.    The uninsured motorist coverage provision of the Alfa policy provides as follows:

> We will pay damages for bodily injury to a covered person if the covered person is legally entitled to collect such damages from the owner or driver of an uninsured car. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured car.[4]

The policy defines the word "use" to mean "the actual manual and physical driving of a car."

The word "car" is defined as "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads."

¶5.    Our state law defines "highway" as follows:

> "Highway" means the entire width between property lines of any road, street, way, thoroughfare or bridge in the State of Mississippi not privately owned or controlled, when any part thereof is open to the public for vehicular traffic and over which the state has legislative jurisdiction under its police power.

Miss. Code Ann. § 63-15-3(a) (Rev. 2004).  "Motor vehicle" is defined as:

> every self-propelled vehicle (other than traction engines, road rollers and graders, tractor cranes, power shovels, well drillers, implements of husbandry and electric personal assistive mobility devices . . .) which is designed for use upon a highway . . . .

Miss. Code Ann. § 63-15-3(c) (Rev. 2004).

---

[4]An endorsement was later added to the Ryalses' insurance policy which amended the policy language to provide for payment for damages arising out of the "ownership, maintenance or use" of "the uninsured motor vehicle."  The endorsement was effective January 28, 1998, and was in place on the date of the accident, April 28, 1998.

4

¶6.     There was no collision or impact between the vehicle belonging to the Ryalses and the MDOT vehicle.  The MDOT vehicle was not being operated on a "highway" as defined by statute.  Although the MDOT vehicle was "designed for use upon a highway," it was not, at the time of the alleged negligent event, being used upon a highway.  The Ryalses contend that MDOT's efforts in removing the dead pine tree from the roadside by the use of its hydraulic lift platform (also commonly referred to as a "bucket") which was permanently attached to the vehicle, constituted the "use" of an uninsured vehicle.  The "use" of the MDOT vehicle occurred several months before the fatal accident.

¶7.     There was absolutely no evidence to suggest that the MDOT vehicle was in transit or was involved in any mode of transportation, that an MDOT employee was behind the steering wheel, that the vehicle's engine was running, or that an MDOT employee was driving or using the vehicle for any purpose related or incident to transportation.  Instead, the vehicle was stationary and off the roadway while the bucket was used to attempt to push the tree down.  The vehicle's purpose, at the time in question, was to allow the MDOT employees to maneuver the equipment permanently attached, i.e., the lift platform, for purposes unrelated to transportation services.

¶8.     We have previously addressed the distinction between the "intended design" of a vehicle and its "actual use" in determining whether uninsured motorist benefits are available, *Dowdle v. Miss. Farm Bureau Mut. Ins. Co.*, 697 So. 2d 788, 790 (Miss. 1997), citing with favor an unpublished opinion written by the United States District Court for the

5

Northern District of Mississippi, *State Farm Mut. Auto. Ins. Co. v. Graham*, No. 3:92-cv-161(B)(D) (N.D. Miss. 1994), in which District Judge Neal B. Biggers found that a dragster which caused an accident was racing on a dirt track road and did not trigger uninsured motorist coverage, even though the dragster could be driven on a highway. Here, at the time of the alleged negligent act, the the MDOT vehicle was used merely as a platform for the bucket which was used to attempt to push a tree down, *not* as a motor vehicle traveling on a highway.

¶9.    Persuasive decisions from other states confirm the significance of the distinction between intended design and actual use of a vehicle. In *Progressive Cas. Ins. Co. v. Yodice*, 694 N.Y.S.2d 281, 283-84 (N.Y. Sup. Ct. 1999), *aff'd*, 714 N.Y.S.2d 715 (N.Y. App. Div. 2000), the trial court held that the accident must be connected with the actual operation of a motor vehicle in its intended use as transportation:

> Not every accident involving an automobile concerns the use or operation of that vehicle. The accident must be connected with the use of the automobile qua automobile. The use of the automobile as an automobile must be the proximate cause of the injury. The inherent nature of an automobile is to serve as a means of transportation to and from a certain location. The accident in question did not arise out of the use or operation of the truck as a truck, i.e., as a means of transportation; it arose out of the operation of a business operating a ride, which happened to be permanently secured to the back of a stationary vehicle.

¶10.    In *D & M Logging Co. v. Huffman*, 427 S.E.2d 244, 247 (W. Va. 1993), the court held that the "[u]se of the crane is not 'operation, maintenance or use of a covered auto '

6

because the definition of an 'auto' specifically excludes coverage of the crane." The court determined that the only relationship to the automobile insurance policy was the allegation that one of D & M's employees negligently loaded logs onto a truck. The court concluded that the language of the insurance policy, considered with the statutorily-required policy language, did not extend coverage to the circumstance where the claim is based on the insured's employee negligent loading of logs by use of a mechanical device attached to the covered vehicle. *Id*.

¶11.    As the Court of Appeals dissenters correctly pointed out, the Alfa policy defined "use" as the "actual manual and physical driving of a car." It is clear from this definition that "use" required someone to be driving the vehicle for some type of transit or transportation purpose. We find that the circuit court and the Court of Appeals erred as a matter of law in determining that there was sufficient evidence for the jury to conclude that the accident arose from the use of the MDOT vehicle.

## CONCLUSION

¶12.    Finding that the evidence was legally insufficient to establish that the alleged negligent act occurred during the "use" of an uninsured vehicle, we reverse the judgments entered by the Circuit Court of Forrest County and the Court of Appeals, and we render judgment in favor of Alfa Insurance Corporation.

¶13.    **REVERSED AND RENDERED.**

    **COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH, C.J., DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶14. I agree with the majority's finding that MDOT's use of its bucket truck was not a covered "use" under the terms of the policy, which explicitly defined "use" as the "actual manual and physical driving of a car." However, I disagree with the majority' decision because its analysis is too narrow. As the majority has found that "use" of the MDOT vehicle was not a covered event, it follows that this Court is obligated to determine if coverage is available under any of the other applicable policy terms before reversing the decisions of two lower courts and rendering an opinion of its own.

¶15. Under the specific terms of the policy, Alfa would cover damages arising out of the ownership, operation, maintenance, or use of an uninsured vehicle. Our rules of construction provide that "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written," yet "ambiguous and unclear policy language must be resolved in favor of the non-drafting party-the insured." *Noxubee County Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004) (citations omitted). Another rule, applicable to the instant situation, is that "where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning." *Id*. (citing *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 (Miss. 1999)).

¶16. While "use" was defined in Alfa's policy, "operation" was not defined. Since Alfa failed to define "operation," this Court must give the policy term its ordinary and popular meaning. See *Noxubee County*, 833 So. 2d at 1165. The evidence was that a truck was

8

driven to the site, outriggers were deployed to stabilize the truck, and a bucket was operated by a control panel on the side of the truck. The evidence before this Court supports a finding that the Ryalses' injuries arose out of the operation of the MDOT truck. Hence, it was appropriate for the trial court to submit the issue of causation to a jury.

¶17. I must dissent because the majority denies the Ryalses coverage based on the definition of the term "use" and ignores all of the facts which support coverage based on "operation" of the vehicle.