# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-00432-SCT

*MISSISSIPPI FARM BUREAU CASUALTY*
*INSURANCE COMPANY*

*v.*

*ANTHONY POWELL AND TRENT CRAFT*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2020 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | OWEN PATRICK TERRY |
| | SAM STARNES THOMAS |
| | MARK K. TULLOS |
| | WILLIAM KANNAN STUBBS |
| | W. TERRELL STUBBS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SAM STARNES THOMAS |
| | OWEN PATRICK TERRY |
| ATTORNEYS FOR APPELLEES: | WILLIAM KANNAN STUBBS |
| | MARK K. TULLOS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/07/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Trent Craft accidentally fell on a trailer owned and used by Anthony Powell that was hitched to a pickup truck owned and used by Powell. Powell had purchased an automobile insurance policy issued by Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau). Farm Bureau filed a complaint against Powell and Craft seeking a declaration that it did not provide coverage for the incident and had no duty to defend and/or indemnify

Powell under the liability coverage of its policy with regard to claims of Craft and that Farm Bureau had no obligation to Craft under the medical payments coverage of its policy. The trial court denied Farm Bureau's motion for summary judgment, and this Court granted Farm Bureau's petition for an interlocutory appeal. We affirm the decision of the trial court denying Farm Bureau's summary judgment motion.

## FACTS AND PROCEDURAL HISTORY

¶2.    This case commenced when Farm Bureau sought a declaratory judgment.  Powell filed an answer and counterclaim, arguing that Farm Bureau wrongfully had denied coverage for the accident, *inter alia*. Powell requested damages and a declaratory judgment that he was entitled to a defense. Craft answered and cross-claimed for damages against Powell. Craft pled that the accident occurred while working for Powell on or about August 16, 2017.

¶3.     Farm Bureau took depositions of Craft and Powell from which the following facts were developed.  Powell drove the insured pickup and trailer loaded with the scaffolding to the job site. At the job site, the scaffolding was erected on the trailer to access the installation of trusses for a pole barn. Craft was assisting another worker, Carl Garner, installing trusses for the roof of a pole barn. A ladder was provided for the workers to get up or on the scaffolding and to get on or off the scaffolding. At all times, the trailer was hitched to Powell's 2000 Ford F250 truck.[1] Craft and Powell described the truss installation process.

---

[1]The 2000 Ford F250 Super is listed as vehicle number one on the schedule of vehicles insured.

2

Craft said that he and Garner used the scaffolding on the trailer to install each truss. When Craft and Garner finished installing a truss, Powell would drive the truck and trailer forward to the next truss position, while Craft and Garner remained on the scaffolding. Once at the next installation point, Powell would turn off the truck's engine and exit the truck to do other tasks while Craft and Garner installed that truss. After some trusses had been installed, it was time to break for lunch. The truck's engine was off. Garner and Craft were dismounting from the scaffolding and trailer to eat lunch. Garner was getting off first, and he jumped onto the bed of the trailer, which caused the trailer hitched to the pickup to rock. Craft plummeted onto the trailer bed, and his head struck the bed of the trailer, which caused, *inter alia*, severe injury to an eye socket. Craft testified that the accident would not have occurred if Powell had chocked the tires of the truck and trailer.

¶4.    Farm Bureau filed a motion for summary judgment, arguing that the accident was not covered by either the liability or medical payments provisions of its policy. After a hearing, the trial court denied the motion.

## STATEMENT OF THE ISSUES

¶5.    Farm Bureau's brief claims that the sole issue is whether an "auto accident" occurred. In its brief, Farm Bureau requested that this Court retain this matter, for it presents "a major question of first impression," because the term "auto accident" has never been directly addressed by this Court. Powell and Craft responded that the issue is "whether the circuit court erred by denying Farm Bureau's motion for summary judgment seeking to avoid

3

coverage of the bodily injury claim asserted by Trent Craft under the automobile policy it issued to Anthony Powell." In its reply brief, Farm Bureau asks this Court to reverse and render judgment in favor of Farm Bureau, declaring as a matter of law that Farm Bureau has no duty to defend or indemnify Powell and that Farm Bureau has no medical payment obligation to Craft.

¶6.     The following language is taken verbatim from the policy:

## PERSONAL AUTO POLICY

## AGREEMENT

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine your rights, duties, and what is covered and not covered. In exchange for the premium paid by you, and for your compliance with all the applicable provisions of this policy, we will provide specific insurance coverage. The coverage provided is limited to that shown in the Declarations and/or endorsements and for which any required premium is paid. Coverage described in the policy is not provided unless also shown in the Declarations and Endorsements as applicable. The Declarations and all applicable endorsements are hereby deemed to be a part of this policy. Words and phrases that appear in bold print have special meaning. Refer to DEFINITIONS.

## DEFINITIONS

**D. Auto** means a land motor vehicle or a trailer designed for travel on public roads but does not include mobile equipment.

**E. Bodily Injury** means physical injury to the body of, or sickness or disease sustained by a natural person . . .

**G. Covered auto** means:
        (1)any auto shown in the Declarations for a which a premium charge is shown
        (2) any newly acquired auto

4

(3) any trailer you own.

**P. Occupying** means:
    (1) in;
    (2) upon; or
    (3) getting in, on, out, or off.

**U. Trailer** means a vehicle designed to be pulled by a:
    (1)private passenger auto
    (2)or pickup or van.

## PART A-LIABILITY COVERAGE

**INSURING AGREEMENT**

**A.** We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident and *arising out of the ownership,* maintenance, *or use of any **covered auto*** including loading and unloading thereof. Damages include prejudgment interest awarded against any **insured**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability. We will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgment or settlements. We have no duty to defend any **suit** or settle any claim for **bodily injury** or **property damage** not covered under this policy.

## LIMIT OF LIABILITY

**B.** Any **covered auto** and *attached trailer* and/or trailers are considered to be *one unit* for purposes of **Part A-liability coverage**.

## PART B-MEDICAL PAYMENT COVERAGE AND DEATH INDEMNITY COVERAGE

**INSURING AGREEMENT**

**A.** [Farm Bureau] will pay reasonable expenses under Medical Payments Coverage for necessary medical and funeral services because of bodily injury

5

(1) caused by an auto accident and (2) sustained by any *insured*.

. . . .

C. Insured as used in **A. MEDICAL PAYMENTS COVERAGE** under **PART B-MEDICAL PAYMENTS COVERAGE** and **DEATH INDEMNITY COVERAGE** means:

**1.** You or any **family member**:

       a. while **occupying**, or
       b. as a pedestrian when struck by; any auto

**2.** Any other person while **occupying** with your permission any **covered auto**.

. . . .

## PART D-COVERAGE FOR DAMAGE TO YOUR AUTO

**A.** We will pay for direct and accident loss to any **covered auto** or any **non-owned auto**, including its equipment, minus any applicable deductible shown in the Declarations for loss caused by:

**1. Collision**, but only if the Declarations indicate that coverage is provided under **Part D-Coverage For Damage To Your Auto** for **collision** for that particular **covered auto**.
. . . .

**B. Collision** means the overturn of any covered auto, or its impact with another vehicle or object. **Collision** does not mean fire, theft, collision with bird or animal, or breakage of glass. However, you may elect to have breakage of glass considered a loss caused by **collision**.[2]

. . . .

---

[2]No claim has been asserted under Part D. Therefore, collision coverage is inapplicable to this case.

**PART F-GENERAL PROVISIONS**

    **A.** This policy contains all the agreements between you and us concerning the insurance afforded.

¶7.    The phrase "auto accident" is not defined within the four corners of the insuring agreement.

**STANDARD OF REVIEW**

¶8.    This Court applies de novo review to a trial court's summary judgment ruling. *Miss. Baptist Med. Ctr., Inc. v. Phelps*, 254 So. 3d 843, 845 (Miss. 2018) (citing *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004)). When the sole issue under consideration is the interpretation of the insurance policy, it presents a question of law that is reviewed de novo. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004); *Delashmit v. State*, 991 So. 2d 1215, 1218 (Miss. 2008)).

**DISCUSSION**

¶9.    Farm Bureau argues that its insurance contract on the vehicles (truck and trailer) owned and used by Anthony Powell fails to provide liability coverage for Powell and fails to provide medical payments coverage related to the injuries suffered by Craft. Farm Bureau asks the court to define a term, "auto accident," found in its policy but not defined in the same policy. To support its plea, Farm Bureau primarily relies on language selected from two unrelated cases, *Bryant v. Allstate Insurance Co.*, 790 F. Supp. 676 (S.D. Miss. 1991), and *Alfa Insurance Corp. v. Ryals*, 918 So. 2d 1260 (Miss. 2005), to provide the definition

7

for the phrase "auto accident." No court in Mississippi has addressed "auto accident" in this context, but appellate courts in other states have. Appellate courts in Florida, Idaho, and South Dakota have declined to adopt such a narrow interpretation, as Farm Bureau seeks in this case.

¶10.     "Ambiguities exist when an insurance policy can logically be interpreted in two or more ways." ***Cont'l  Cas. Co. v. Allstate Prop. & Cas. Ins. Co.***, 235 So. 3d 40, 50 (Miss. 2017) (internal quotation marks omitted) (quoting ***U.S. Fid. &Guar. Co. of Miss. v. Martin***, 998 So. 2d 956, 963 (Miss. 2008)). Ambiguities must be construed in favor of the insured. ***Martin***, 998 So. 2d at 963. "[I]n interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." ***J & W Foods Corp. v. State Farm  Mut. Auto. Ins. Co.***, 723 So. 2d 550, 552 (Miss. 1998) (citing ***Cont'l Cas. Co. v. Hester***, 360 So. 2d 695, 697 (Miss. 1978)).

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. . . . If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage.

***Martin***, 998 So. 2d at 963 (citations omitted). Farm Bureau posits that any interpretation other than what it offers defies common sense, despite courts in other states having reached a different conclusion.

> **I.     The auto accident arose out of the use and ownership of the covered auto.**

8

¶11. "Although the words 'auto' and 'accident' have definite or generally accepted meanings, when used together, these two words do not express a clear and precise meaning. *Nat'l Merch. Co. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 530 (Fla. Dist. Ct. App. 1981). As such, the combined phrase is "ambiguous." *Id.* "The insurer cannot, by failing to define the terms 'auto accident' or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided." *Id.* When the term "accident" was not defined in the policy, the court concluded that the phrase auto accident did "'flow from,' 'originate from' or 'grow out of'" Laboss's use of the covered auto under the policy. *Laboss Transp. Servs., Inc. v. Global Liberty Ins. Co. of N. Y.*, 208 F. Supp. 3d 1268, 1276 (S.D. Fla. 2016). "A fair interpretation of the phrase 'auto accident' would be an accident arising out of the 'ownership, maintenance, and use' of the automobile." *N. Star Mut. Ins. Co. v. Peterson*, 749 N.W.2d 528, 532 (S.D. 2008); *see also* *Hawkeye Sec. Ins. Co. v. Gilbert*, 866 P.2d 976, 978–79 (Idaho Ct. App. 1994); *Nat'l Merch. Co.*, 400 So. 2d at 531. Restrictive interpretations should not favor the drafter. *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co*, 723 So. 2d 550, 552 (Miss. 1998). Our state law requires just the opposite. *Id.* The accident arose out of the use and ownership of Powell's vehicles.

¶12. In *Peterson*, a pickup engine was idling but the vehicle was not moving when an accidental shot was fired within the pickup, injuring a person. *Peterson*, 749 N.W. 2d at 531. The court determined that since the insurance policy did not define the phrase auto accident,

9

the phrase must be interpreted and construed broadly in favor of the insured to find coverage. *Id.* The *North Star* court defined auto accident as "arising out of the ownership, maintenance, or use of the vehicle," using that exact phrase from the policy language to craft its definition. *Id.* The fact that the *North Star* pickup was not moving was of no consequence.

¶13.   In *National Merchandise Co.*, the car's use as an "office on wheels" to store drugs while the insured was transporting them was not suspended during time a child ingested drugs stored in car. *Nat'l Merch. Co.*, 400 So. 2d at 533 (internal quotation marks omitted). The court found this situation to be an auto accident because the incident arose out of the use of the vehicle. *Id.* In today's case, the trailer's use as a means of transporting Craft from one truss to the next was not suspended at the moment Craft fell onto the trailer. Deposition testimony reveals that Powell towed the trailer to the job site, then erected the scaffolding on the trailer at the job site. Craft occupied the trailer at the times that Powell moved the vehicles in the barn. The trailer was in use throughout the period Powell, Craft, and Garner were working.

¶14.   *National Merchandise Co.*, *North Star Mutual Insurance Co.*, and *Hawkeye Insurance Co.* all defined "auto accident," as an accident "arising out of the ownership, maintenance, or use of a motor vehicle." That language can be found in Farm Bureau's policy. *See supra* ¶ 6.

¶15.   Farm Bureau argues that, since the truck and trailer were not moving at the time of

the accident, they were not being used. However, the policy has no provision that requires that either vehicle be moving. Use extends to reasonably expected activities incidental to the operation of the vehicles. Such activities, to which insurance coverage has been held to apply, include entering and exiting the vehicle. *Bolton v. N. River Ins. Co.*, 102 So. 2d 544 (La. Ct. App. 1958) (slamming a door on a person's hand); *Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 157 Cal. Rptr. 98 (Cal. Ct. App. 1979) (child exiting vehicle and crossing street when hit by oncoming car); *Perryman v. Citizens Ins. Co. of Am.*, 401 N.W.2d 367 (Mich. Ct. App. 1986) (loading and unloading). Craft's activities included occupying a trailer in use and subsequently attempting to exit and unload from same, which proximately caused his injuries.

¶16.    The Farm Bureau policy provides liability coverage for "an auto accident . . . arising out of the *ownership*, maintenance, or *use* of any **covered auto** including loading and unloading thereof." (Emphasis added.)  "When a policy insures an automobile for the 'use' of the automobile, the chain of causation between the use of the automobile and the injury must be direct." *Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999) (citing *Nat'l Mut. Cas. Co. v. Clark*, 193 Miss. 27, 7 So. 2d 800, 803 (1942)).

¶17.    Farm Bureau cites an unrelated uninsured-motorist case to argue that the truck and trailer were not being used at the time of the accident within the meaning of the *liability* policy. *Ryals*, 918 So. 2d at 1260. *Ryals* is an uninsured motorist case where the uninsured vehicle was not present when the injury occurred. *Id.* The court in *Ryals* held that an accident

11

in which two people were killed when a dead pine tree fell on their vehicle had not arisen out of the use of an uninsured bucket truck that workers had used in an attempt to remove the tree several months earlier. *Id.* at 1261. Thus, uninsured-motorist coverage did not apply to the accident. *Id.*

¶18.     Unlike the case before us, the *Ryals* UM policy defined "use" as "the actual manual and physical driving of a car." *Id.* at 1262 (internal quotation marks omitted). *Id.* The Alfa policy did not cover a parked vehicle in another location at time of accident. *Id.* at 1263. Farm Bureau's policy does not define "use" as "the actual manual and physical driving of a car" as did the policy in *Ryals*. *Id.* at 1262. The Farm Bureau policy contains no definition of "use." Although Farm Bureau seeks to import these terms as definitions for its policy, the policy did not include any such language. This Court cannot add or take away the plain language of an insurance policy. *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002).

¶19.     Powell used the truck and trailer to transport Craft and Garner from truss to truss. Between trusses, he turned off the engine as the men worked. Farm Bureau argues that coverage applied only when the truck's engine was running. But that reading would result in intermittent coverage depending on whether the engine of the truck was on or off, as the truck made its way down the row of trusses. The policy's plain language did not make coverage contingent on the truck's engine being on. The policy covered the trailer, and it has no engine. Such an interpretation conflicts with the policy's language.

¶20.    Further, the liability coverage section of the policy includes "loading and unloading" a covered vehicle.  Stationary vehicles are covered. Reading the policy as a whole, the policy defines "occupying" as "getting in, on, out or off," providing that coverage applies when a person is exiting the vehicle, as Craft was attempting to get off the scaffolding and trailer for lunch. No intervening event occurred so unrelated to the use of the truck and trailer that it broke the chain of causation between Craft's use of the truck and trailer and his fall.

¶21.    It is undisputed that Powell owned the trailer. The injury arose out his ownership and use of the covered auto and trailer.

## II.    There was an auto accident.

¶22.    Farm Bureau urges this Court to novate the contract by importing language from ***Bryant v. Allstate Insurance Co.*** We decline.  In ***Bryant v. Allstate Ins. Co.***, 790 F. Supp. 676 (S.D. Miss. 1991), liability coverage was not at issue. The facts of ***Bryant*** were perspicuously distinguishable. The injuries in ***Bryant*** were the result of an intentional tort. Bryant owned a van insured by Allstate, which provided medical-payments coverage, uninsured-motorist benefits, and comprehensive coverage. ***Id.*** at 676. Bryant was driving the van when an assailant exited a house carrying two shotguns. ***Id.*** The assailant shot Bryant and damaged the van. ***Id.*** Bryant submitted a claim not only for his injuries but for damages to the van. ***Id.*** He was paid for damages to the van under comprehensive coverage. ***Id.*** However, his medical-payments claim was denied. ***Id.***  The district court held that, because the covered vehicle had nothing to do with the shooting, but only had been the "situs" of the

13

shooting, it was not an auto accident." ***Id.*** at 679. We agree. That court found that "when any party inflicts injury which is totally unrelated to the use of that vehicle, no causal connection exists between the vehicle and that injury." ***Id.*** at 678. In today's case, the truck and trailer were in use. Craft's severe injury occurred when his face struck the insured trailer while he was getting off for lunch.

¶23.     ***Bryant*** involved an intentional act of a person shooting the insured. ***Id.*** at 676. Not only was there was no auto accident, there was no accident. ***Id.*** at 679. Contrastingly, Craft accidentally fell on the insured trailer, which was defined in the policy as a **covered auto**. *See supra* ¶6.

¶24.     ***Bryant*** relied on two cases from this Court, both involving intentional acts. In ***Coleman v. Sanford***, 521 So. 2d 876 (Miss. 1988), the insured was intentionally shot with a hand gun. This Court affirmed summary judgment for the insurer by holding that the shooting was "a voluntary, deliberate act which rendered the use of the vehicle incidental." ***Id.*** at 877. In ***Roberts v. Grisham***, 487 So. 2d 836 (Miss. 1986), the decedent, Roberts, was sitting in his vehicle when Grisham walked over to his side of the truck and shot him in the head. The ***Roberts*** court held that deliberate voluntary acts such as Grisham's assault render a vehicle's use incidental to the occurrence. ***Id.*** at 839. In neither case did the injury arise out of the use of the vehicle.

¶25.     Farm Bureau tells us the policy provisions at issue, which require an injury "because of an auto accident" and/or "caused by an auto accident," require a direct causal connection

14

to an automobile accident. In other words, the policy requires an auto accident. We agree. Farm Bureau asks this Court to modify the contract to define "auto accident" as "a situation in which an automobile, *being used as a means of transportation*, is involved in some type of collision[3] or near collision with another vehicle, object, or person." The language "being used as a means of transportation" is not found in the policy. Farm Bureau asks the court to give birth to a undefined phrase after choosing not to define the same words and phrases in the policy. In the case *sub judice*, we politely decline their invitation to modify or alter the contract. Creating definitions to terms not specifically found in the contract is not the solution to resolving the dispute.

¶26. Thus, we reject the plea to define "auto accident" for the following reasons: (1) Farm Bureau chose not to define the phrase "auto accident" in the policy, (2) other courts have determined that the phrase "auto accident" is an ambiguous term, and (3) to interpret the contract in a manner Farm Bureau requests is equivalent to rewriting the contract. Ultimately, the answer to today's case of whether Powell and Craft have insurance coverage lies within the insuring agreement.

¶27. No Mississippi authority defines "auto accident" or "accident" in the context of an auto liability policy. "Accident," is defined as "a sudden event that is not planned or intended and that causes damage or injury." *Accident*, Merriam-Webster Dictionary (11th ed. 2022).

---

[3]The definition of collision is found within Part D-Payment for Damage to Your Auto. *See supra* ¶ 6.

15

The word "auto" has been clearly defined elsewhere in the policy.[4] When combining the policy definitions of "auto" and "covered auto" with the ordinary meaning of accident with the facts presented here, an accident occurred involving a covered auto. This sudden, unintended event caused serious injury on a trailer connected to a covered auto.

## CONCLUSION

¶28.    Because an accident arose out of the use and ownership of the covered vehicles, the Court affirms the trial court's denial of summary judgment to Farm Bureau and remands this case to Simpson County Circuit Court for further proceedings.

¶29.    **AFFIRMED AND REMANDED.**

**KITCHENS AND KING, P.JJ., COLEMAN, BEAM AND ISHEE, JJ., CONCUR.  MAXWELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY CHAMBERLIN AND GRIFFIS, JJ.; COLEMAN, J., JOINS IN PART.**

**MAXWELL, JUSTICE, CONCURRING IN RESULT ONLY:**

¶30.    Let's be honest, this is not what ordinary people would call an auto accident.  And Trent Craft did not just fall onto a trailer.  *See* Maj. Op. ¶ 1.   In truth, he fell from a very tall scaffolding—a scaffolding the insured, Anthony Powell, had just slapped together on top of a trailer.  The scaffolding was attached to an extension ladder and screwed into the bed of the trailer.  This rigged-up lift allowed Craft to climb high enough to install support trusses for a barn.  Craft testified that he was on top of the scaffolding coming down when fellow

---

[4]Auto, as defined by the Farm Bureau Automobile Policy, means "a land motor vehicle or a trailer designed for travel on public roads."

worker Carl Garner descended the scaffolding and "jumped down on the trailer." "[T]hat's when the scaffolding moved." All Craft remembered was falling from his high perch—a distance he estimated to be around twenty feet. The vehicle was not in operation nor was it even running or occupied.

¶31. Based on these facts, I certainly understand why Mississippi Farm Bureau sought interlocutory appeal to advance its argument that Craft's scaffolding fall was not a covered "auto accident," as that undefined phrase is used in Powell's insurance policy.

¶32. But after considering the policy and Mississippi law, I point out that this Court cannot interpret the undefined phrase "auto accident" by ignoring the rest of the policy and viewing it in isolation. Instead, when "interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998) (citing *Cont'l Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978)). Mississippi law also requires we construe insurance policies broadly in favor of the insured. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Latham*, 249 So. 2d 375, 378 (Miss. 1971); *Am. Hardware Mut. Ins. Co. v. Union Gas Co.*, 238 Miss. 289, 293, 118 So. 2d 334, 335 (Miss. 1960)).

¶33. Looking to the liability-coverage portion of this particular policy, Mississippi Farm Bureau agreed to "pay damages for bodily injury . . . for which the insured becomes legally responsible because of an auto accident *and* arising out of the ownership, maintenance, or

17

use of any covered auto *including the loading and unloading thereof*." (Emphasis added.)

¶34. Mississippi Farm Bureau focuses almost solely on the first phrase of the liability coverage provision. And it urges us to adopt the view "that in ordinary usage the term 'auto accident' refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object or person." ***Aetna Life & Cas. v. Fed. Ins. Co.***, No. CIV.A. 96-5995, 1997 WL 746189, at *4 (E.D. Pa. Nov. 26, 1997) (citing ***State Farm Mut. Ins. Co. v. Peck***, 900 S.W.2d 910, 913 (Tex. Ct. App. 1995); ***Farmers Ins. Co. v. Grelis***, 718 P.2d 812, 813 (Wash. Ct. App. 1986); ***Jordan v. United Equitable Life Ins. Co.***, 486 S.W.2d 664, 667 (Mo. Ct. App. 1972)). In short, Farm Bureau argues, because there was no car collision or near collision, there was no auto accident and, thus, no coverage. At first blush, I agree that this stance certainly seems reasonable. But a closer look at the policy shows that Farm Bureau's proposed interpretation is more narrow than its particular policy's language.

¶35. To absolutely require a vehicle collision or near collision to trigger coverage would ignore the policy's language that provided coverage for injuries arising out of the mere acts of "loading or unloading" a vehicle. Obviously a simultaneous car collision is not necessary for coverage to apply when one is loading or unloading a covered auto—which the parties agree the trailer is under this policy.

¶36. In other words, because the policy contemplates situations where coverage exists for injuries caused by an auto accident and *arising out of loading and unloading* of the covered

18

auto, then the policy could not have reasonably restricted the term "auto accident" to only those limited situations involving an actual car crash or near crash.

¶37. Thus, based on the plain language of the policy, which must be construed to give operative effect to every provision, I agree the undefined term "auto accident," as it is used in the specific policy before us, is broader than a mere car crash. Here, undeniably, there was no car wreck. But there was an accident involving the unloading of the trailer, a covered auto. Whether this accident was an "auto accident" is a close call, to be sure. But, while I do not join in all of the majority's analysis, I do agree Mississippi law requires us to construe the policy in favor of the insured. And after doing so, I agree with the majority's conclusion that there was a covered "auto accident," under this policy, triggering liability and medical-payments coverage.

**CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**